UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOSI SECRET, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. A. No. 20-2175 (JMC) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REVISED MOTION FOR EXTENSION
OF TIME TO FILE REPLY BRIEF / OPPOSITION**

Pursuant to Fed. R. Civ. P. 6(b)(1)(A), Defendants respectfully seek to expand the extension of time sought little over a day ago from December 7, 2022 (to which Plaintiff consented) to Tuesday, December 13, 2022 (three days shorter than Defendants' original request for an extension until December 16, 2022). Plaintiff's consent has not been solicited because of the hour of the request, as well as its futility. Plaintiff has already previously indicated that he is unwilling to consent to an extension of greater than two days. Because the request is supported by good cause, notwithstanding Plaintiff's presumptive objection, the motion for additional time should be granted irrespective of Plaintiff's objection.[1]

Owing to the impact of an unrelenting docket that generally requires multiple court filings every day, as well as pressing briefing deadlines for dispositive motions falling, more specifically, within a very narrow window of time around the filing deadline in this case, including (i) a

---

[1] Counsel's goal was to submit this Revised Motion for Extension of Time before the Court ruled on the earlier version and counsel sincerely regrets that he was unable to deliver on that intention. Only moments before filing did counsel see that the Court had acted on the earlier motion and, as a result, counsel has added this footnote.

November 30, 2022 motion to dismiss a 444-page complaint alleging, among other things, violations of civil RICO, constitutional torts, the Federal Tort Claims Act, and the APA; (ii) an unscheduled emergency matter in a highly contentious FOIA matter that consumed from afternoon until midnight on December 1, 2022; (iii) a December 2, 2022 motion to dismiss an APA complaint; and a (4) December 5, 2022 motion to dismiss a mixed case employment lawsuit that required 40 pages to comprehensively address, Defendants were unable to file their Reply Brief by midnight on December 5, 2022.  Coming to accept that in advance of the deadline's expiration, counsel scrambled to obtain consent and later – which but a fraction of the time needed – filed with consent, rather than in the face of Plaintiff's opposition.  That was a grave mistake borne of a convergence of regrettable circumstances which Defendant seeks to correct by its Revised Motion.

While "the press of business" is a palatable and sufficiently vague shorthand invoked by Civil Division AUSAs in this district – in absolute good faith – to describe an intractable and chronic state of affairs, it leaves far too much unsaid.  That is especially so in a case like this, where opposing counsel's response compels a level of granular explanation that most hard-working public servants blanch at providing.  But when it is not enough for an officer of the Court to describe conditions that require more time as stated above, and it is not enough to explain that the consequence of having so little time is to have yet to seek, review and confer over utterly new productions potentially impacting the next brief, and it is not enough to say that the only intervening time was fully and irrefutably commanded by either work or a family emergency involving the unexpectedly accelerated demise of a loved one, apparently more detail is precisely what is needed.  The exchange over undersigned counsel's request is reproduced in the margin.[2]

---

[2] "Gunita:  I just got the new production on Friday and am dealing with challenging circumstances of my Significant Other losing her remaining parent.  He took an unexpectedly

Lest there be any mistaking its powerful impact on the timing of motions to extend, the humiliation associated with seeking multiple extensions of time through no fault of one's own can nonetheless be profound and searing. Notwithstanding rationality's message that the circumstances are beyond one's control and not a product of one's making, an aversion to those kinds of strong feelings cause people to take some fairly stark actions to minimize the need to seek more time as much as humanly possible, like the Civil Division AUSA who went six months without a refrigerator because she could not make time; or another who managed her docket by "pulling one all-nighter" every week, and a series of 12-hour days to boot; or another who leaves the office at supper time to feed her children only to return to an additional five to six hours of work at home after they sleep, rarely retiring before 2:00 am.; or another whose only respite during a 4-year stint was a serious medical condition for which she was required to take disability leave; or the young AUSA who, after three years, could no longer button his daughter's sweater on account of the physical manifestations of his anxiety.  This explains why extension requests often come late:

---

accelerated turn for the worse, which had us in Baltimore all weekend and made things impossible for me.  Would you all kindly consent to an extension until December 16.  Thanks."  Dec. 5, 2022 email from John Moustakas to Gunita Singh.

"John, Gunita is not in the office so I am responding to your message below.  Plaintiff will consent to a *two-day extension*, up to and including December 7, 2022 for the filing of Defendants' combined opposition and reply in light of your representation as to your family emergency. To the extent Defendants move for an extension of more than two days, please include the following as Plaintiff's position in your motion:

> "Plaintiff was notified of Defendants' request for an additional extension at 5:25 PM on December 5, 2022--the date Defendants' reply in support of their motion for summary judgment is due.  Defendants' instant request for an extension is the fourth during summary judgment briefing in this litigation; Defendants have now had approximately 77 days to draft their brief. In light of Defendants' counsel's representation of a family emergency, Plaintiff consented to an additional two days for the filing of Defendants' brief, up to and including December 7, 2022."

Dec. 5, 2022 email from Adam Marshall to John Moustakas.

because they come with significant costs that perpetuate the problem they are often trying to solve, they are Pyrrhic victories to be y to be avoided whenever possible.

Counsel frequently need serial extensions of time because they have responsibility for a volume of cases no sensible lawyer operating with free will in the private practice of law would *ever* accept under similar circumstances. But entering one's appearance in an assigned case is not a matter of volition and the consequences of overextension cannot be mitigated as the partner in private practice would – by engaging contract associates to facilitate the retention of a big, new matter. Civil Division AUSAs in this District have no control over when and in what ways their cases might explode, making all deadline rather more perilous affairs. While this is a true of all lawyers, the impact of Murphy's Law is on an order of incomparable magnitude for a group which consistently operates on a razor's edge, with every minute of every day accounted for well beyond the business hours that counsel's email implicitly evokes.

Given the plainly asymmetrical nature of parties' needs for extensions of time, the dynamic that would emerge – and has emerged here – is not hard to predict. It is well represented in the reflexive comment: "Defendants have now had 77 days to draft their brief." It is statements like this one that, as counsel suggested above, "compel[] a level of granular explanation that most hard-working public servants blanch at providing." The truth is that counsel has had, in fact, zero days thus far – *i.e.*, far fewer than 77 – to prepare Defendant's Reply. Because seeing is believing, undersigned counsel includes immediately below the well-documented findings of the Civil Division's leadership, recently deployed in a form motion for additional time to answer or otherwise

response to complaints in cases that are not assigned on the 1st of 60 days but, more commonly now, on the 55th of 60 days.[3]

According to the Office's Civil Chief, who closely monitors the Office's incoming case volume, cases delegated to the U.S. Attorney's Office for handling in the past few months have approached or surpassed all-time monthly highs. For context, in FY2021 (ending September 30, 2021), the U.S. Attorney's Office was served with a total of approximately 1,946 new cases, or roughly 162 new cases each month on average during FY2021. The roughly 1,946 new cases received in FY2021 represented an all-time fiscal year high and more than double the number of cases received as recently as FY2017 (which year saw the Office receive roughly 930 new cases) – all of this with no appreciable increase in the number of Assistant U.S. Attorneys over whom to spread the staggering increase.

Cases received in the past few months have dwarfed even those elevated totals – again, with no appreciable increase in attorney headcount. Since June 2022, the U.S. Attorney's Office has been served with no fewer than 215 cases per month. Through September 2022, that volume was fueled in part by a plethora of cases seeking provisional injunctive relief in the context of the fiscal year 2022 Diversity Visa program. That said, the end of the fiscal year did not bring any relief. To the contrary, in October 2022, the Office received an all-time monthly high of 272 new civil cases. Projecting these number out for 2022 conservatively yields over 2600 cases[4] – for a cumulative increase of 275% over 5 years.  Unsurprisingly, this unprecedented surge in new case filings against

---

[3] *See, e.g.*, *Schillo v. Del Toro, Sec'y of the Navy*, Civ. A. No.22-1872 (APM), ECF No. 5; *Al-Azzawi v. Blinken, Sec'y of State*, Civ. A. No. 22-2534 (TSC); *Moscou v. Dep't of Justice*, Civ. A. No. 22-3125 (CKK).
[4] This number is derived by taking the lowest number of cases in of most recent five months – 215 – and adopting it as the mode, multiplying by 11 months and adding the singular high month of 272 (for which there is an historical confirmation (October 2022)).

the United States in this District has overwhelmed the Office's already swollen civil intake, triage, and assignment queues, delaying certain case assignments to Assistant U.S. Attorneys and initial coordination efforts with agency clients.

As early as Friday, December 2, 2022 – when counsel came to understand that some 500 additional pages were released to Plaintiff and that counsel neither yet had an opportunity to see, much less discuss their impact on the Reply Brief with Defendant – it should have been clear that more time would be needed to complete Defendant's Reply. Indeed, at some point, counsel suggested as much to Defendant, which did not object. Whether a function of some or all of the following factors – embarrassment, miscalculation, undue optimism, sense of duty, or ego – the failure to seek additional time on December 2, 2022 was at least as much a function of the *never relenting* pace and volume of work that comes with a caseload so absurd. As indicated above, the nature of the request, the time it takes to fully document the need, and desire to avoid obtaining extensions that need to be paid down at a later date, also explain counsel's reticence. Before counsel could look up from his desk to think about anything other than the pressing matter before him, it was Friday night and new details were emerging about a family member's dire medical condition.

By Monday, it was far clearer that an extension would be needed but because counsel's scrambling to accomplish many things that had been planned for the weekend, but which were eventually jettisoned, counsel lost the thread until late in the day. Frankly, given the circumstances, counsel expected the extension request to be honored. Counsel regrets allowing duress to get the better of him. Reviewing the 500 pages and determining their bearing on the Reply, consulting with Defendant, and obtaining the supplemental declaration – all before beginning to draft the Reply Brief – was too much to accomplish and counsel should have immediately seen that. Most significantly, counsel miscalculated how little a two-day extension actually amounts to. But given

the late hour that counsel saw the response to the request for more time, counsel could not seek to renegotiate.

Led by a relatively new Chief, the Civil Division now requires two-level supervisory review of all outgoing filings of substance: motions, oppositions, replies, appellate briefs, settlement agreements. The first-level review must be submitted by 3 pm, except on Fridays, when it must be submitted by 1 pm. Second-level review commences with the filing being submitted to the Chief by 9:00 am on the day of filing. The expectation is that, after the Chief's review, no further substantive work on the draft will be done. As a result, the entire filing day is lost. Several hours are also lost on the date of submission to the first-level reviewer. The two-day extension offered to Defendant was a dead letter because, for all practical purposes, it would give counsel the ostensible time from midnight on December 5 – when a motion to dismiss or, in the alternative for summary judgment, was filed – to 3 pm to review records, confer, and draft a Reply in a handful of waking hours.

Defendant asks for an extension until Tuesday, December 13, 2022 as the only way to ensure the availability, if necessary, of large swaths of time without emails, phone calls, and other immediate filings to start and complete the Reply without the ordinary distractions of the normal work week. A Monday, December 12, 2022, deadline would not accomplish that purpose because of the Office's review convention: it would require review of the Reply by the deputy chief by Friday at 1 pm. Given the current time, that leaves roughly two week days to accomplish the many previously discussed conditions precedent to turning in a fully formed brief that can be relied on by the Court as serving its intended purpose of assisting the Court resolve the case. That timing is insufficient; the weekend is needed to insure that the Reply can be completed.

Wherefore Defendant respectfully requests that the Court grant the request for additional time.

Dated: December 7, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ John Moustakas*
     JOHN MOUSTAKAS, D.C. Bar #442076
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2518
     *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOSI SECRET, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 20-2175 (JMC) |
| ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **(PROPOSED) ORDER**

UPON CONSIDERATION OF Defendants' Consent Motion for Extension of Time to File Reply in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment, the Motion is hereby **GRANTED;**

It is hereby further **ORDERED** that Defendants Reply/Opposition shall be filed no later than December 13, 2022;

It is hereby further **ORDERED** that Plaintiff's Reply shall be filed no later than January 27, 2022.

**SO ORDERED.**

Dated: _____    _____
                                                      HON. JIA M. COBB
                                                      United States District Judge

9