**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOSI SECRET,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>Defendants. | Case No. 20-cv-2175 (JMC) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Mosi Secret filed this lawsuit against the Federal Bureau of Investigation (FBI) and Department of Justice (DOJ) seeking records under the Freedom of Information Act (FOIA) regarding deceased Ferguson, Missouri racial-justice activist Darren Seals. ECF 1. As Secret described in his FOIA request, he sought "all records" related to Seals because he was a journalist investigating a story on Seals' death, which Secret described as a murder occurring "under mysterious circumstances." ECF 1-1 at 2. The FBI has produced many documents but continues to withhold: (1) one document under FOIA Exemption 5's deliberative process privilege, (2) documents under Exemption 7(C)'s personal privacy protection, and (3) six categories of documents under Exemption 7(E), which protects "records or information compiled for law enforcement purposes" whose disclosure would reveal "techniques," "procedures," or "guidelines" for law enforcement investigations or prosecutions "if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To assist in resolving the Parties' dispute, the Court has reviewed a ten-page sample set of the FBI's Exemption 7(E) withholdings in camera, which concern aspects of its investigation. ECF 39; ECF 41. Additionally, the Parties appear to dispute the extent to which the FBI's withholdings of (1) certain

sealed court records and (2) records under Exemption 7(A) (those compiled for law enforcement purposes that could interfere with enforcement proceedings) are still at issue in this case. Both sides have moved for summary judgment.

After reviewing the Parties' briefing, the agency's declarations, and the in-camera documents, the Court will **GRANT** in part and **DENY in part** both Parties' motions for summary judgment. The FBI's motion is **GRANTED** with respect to its Exemption 5 and Exemption 7(C) withholdings. But the Court will **GRANT** in part and **DENY** in part the FBI's motion as to its Exemption 7(E) withholdings. While the Court finds that the FBI has properly justified its withholding of five out of six Exemption 7(E) categories, it has failed to show that disclosure of certain information it has withheld under category 2 (covering the focuses of specific investigations) would risk circumvention of the law because that information is already in the public domain. Some of the information contained in the in-camera documents falls into that category, so the Court will direct the FBI to release that information. The Court will also order the FBI to review the remaining category 2 documents to produce all publicly available information consistent with this opinion. Accordingly, the Court **GRANTS** Secret's summary judgment motion as to publicly available category 2 material in the pages produced for in-camera review, but will **DENY** Secret's motion with respect to the remaining 7(E) withholdings. The Court also **DENIES** Secret's motion as to the Exemption 5 and 7(C) withholdings on which the Court has granted summary judgment to the FBI. Finally, the Court will also **DENY** summary judgment to both Parties as to any withholdings independently made under Exemption 7(A) and any withholdings of formerly sealed court documents not covered by the remainder of the Court's opinion, to the extent there remains a live dispute about these issues. Finally, the Court will **DENY** summary judgment to both Parties on the issue of whether the FBI has complied with its obligation

to disclose reasonably segregable material. The FBI is **ORDERED** to conduct a revised, line-by-line segregability analysis that comports with the requirements of recent D.C. Circuit precedent. The agency is **ORDERED** to file a supplemental declaration and Vaughn index with the Court (1) detailing its re-processing of withholdings under category 7(E)-2, (2) substantiating any standalone Exemption 7(A) withholdings and any remaining contested withholdings of formerly sealed court documents, and (3) attesting to the results of its segregability review.[1]

## I. BACKGROUND

Plaintiff Mosi Secret is a journalist. ECF 1 ¶ 3. He filed a FOIA request with the FBI on August 8, 2019. *Id.* ¶ 9. The request asked for "any and all records related to Darren Seals, whose date of birth is May 15, 1987, and date of death is Sept. 6, 2016." *Id.* ¶ 10. Secret was interested in "gathering information" on Seals because he was a well-known Ferguson, Missouri Black Lives Matter protestor who was shot and killed in 2016. ECF 1-1 at 2. Secret believed that "Seals had interactions with federal agents during an FBI drug trafficking investigation, that his death was related to his involvement in [drug] trafficking, and that he was not killed by law enforcement, as many in his community believe." *Id.* Secret thought that the public deserved to have information about "the FBI's interactions with Darren Seals because of suspicions expressed on social media that law enforcement was involved in his death." *Id.* at 2–3.

After an extensive back-and-forth with the FBI without receiving any records, Secret filed his complaint. ECF 1 ¶¶ 14–30 (detailing the email exchanges); *id.* ¶ 32 (alleging that "[a]s of the filing of this Complaint, Plaintiff has received neither a final determination nor any records in response to the Request"). The Parties then filed their cross-motions for summary judgment.

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

ECF 20; ECF 21. Over the course of briefing the motions, the Parties have significantly narrowed the scope of their dispute. While the FBI's original motion for summary judgment discussed withholdings pursuant to FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), ECF 20 at 3, it has since produced some of those documents or Secret is no longer challenging some of the withholdings.[2] As of the time of Secret's reply in support of his cross-motion for summary judgment, only withholdings under Exemptions 5, 7(A), 7(C), and 7(E) remain contested.[3] ECF 34 at 9–10.

Alongside his cross-motion for summary judgment, Secret also filed a motion for in-camera review. ECF 23. He argued that in-camera review of a portion of the FBI's Exemption 7(E) withholdings would assist the Court in assessing the agency's assertions. ECF 23-1 at 4. The Court granted the motion, which was unopposed, finding that review of the ten pages of documents that Secret requested would "facilitate the Court's consideration of the agency's withholdings." ECF 39 at 1. The FBI then delivered the documents to the Court for review. ECF 41. Plaintiff also submitted a notice of supplemental authority, informing the Court of another FOIA case in this district addressing Exemption 7(C) and 7(E) withholdings by the FBI. ECF 40 (citing *Khatchadourian v. FBI*, 821 F. Supp. 3d 1 (D.D.C. 2025)).

---

[2] Secret did not challenge the adequacy of the agency's search or the FBI's invocation of the following FOIA exemptions: "Exemption 1; Exemption 3; Exemption 5's attorney work product privilege; Exemptions 6 and 7(C) as applied to names of FBI personnel, names of third parties merely mentioned, commercial institution personnel, names of victims, names of persons who provided information to the FBI, names of non-FBI government personnel, and third parties with criminal histories; Exemption 7(D); and Exemption 7(E) as applied to file numbers and subfile names, database identifiers and search results, undercover operations, and monetary payments." ECF 21-1 at 9. Secret also did not challenge the FBI's withholding of approximately 3,000 pages of call detail records. *Id.* at 10. The FBI, for its part, "re-reviewed the records at issue and, as a result, reprocessed 514 pages and re-released 499 pages." ECF 30-1, 2nd Seidel Decl. ¶ 31.

[3] The Parties also contest Exemption 6, which the Court does not separately address in this opinion because of its overlap with Exemption 7(C). *See infra* note 6.

## II. LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents in camera, requesting further affidavits, or allowing the plaintiff discovery." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).

## III. ANALYSIS

The Parties' narrowed dispute focuses on three remaining categories of documents: (1) one page withheld under FOIA's Exemption 5; (2) the withholding of the names of local law enforcement personnel under Exemption 7(C); and (3) the withholding of six categories of documents under Exemption 7(E). For the reasons explained below, the Court finds that the FBI has properly justified its withholdings under these exemptions except for category 2 within Exemption 7(E) (covering the focuses of specific FBI investigations). In that category, the FBI improperly withheld certain publicly available facts in the in-camera documents and release of that information would not disclose any investigative techniques or procedures. The Court thus has

reason to believe that there may be additional information in other 7(E)-2 records that must be released. Accordingly, the Court grants summary judgment to the FBI with respect to Exemptions 5, 7(C), and 7(E), except for Exemption 7(E)-2. The Court orders the agency to (1) release certain information redacted from the in-camera documents and (2) reprocess all other records withheld pursuant to Exemption 7(E)-2 to ensure that no similar information has been erroneously redacted or withheld.

After resolving these exemptions, the Court turns to two categories of documents for which it is unclear whether there continues to be a live dispute. Secret asserts that the FBI has failed to release documents unsealed by a court order and failed to properly justify its Exemption 7(A) withholdings. Because the Court is not sure which, if any, such withholdings fall into these categories alone (as opposed to also falling under Exemption 7(C) or 7(E)), the Court will deny summary judgment to both Parties on these categories and order the FBI to address any remaining withholdings in a supplemental declaration and Vaughn index, including whether it contends that the records at issue have been properly withheld on another basis addressed by this opinion.[4] The Court will also order the FBI to revisit the segregability analysis for all disputed records in light of recent D.C. Circuit precedent.

Finally, before diving into analysis of the specific exemptions, the Court addresses Secret's argument that the FBI's re-processing and release of records during briefing divests the agency's declarations of the usual "presumption of good faith." *See, e.g.*, ECF 34 at 27–28. The D.C. Circuit has "declined to find subsequent disclosure as evidence of bad faith, reasoning that to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure." *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002).

[4] In a Vaughn index, the agency describes the documents withheld in part or in full. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

The Court "will not find bad faith by a mere allegation of agency misrepresentation." *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 79 (D.D.C. 2020) (refusing to find bad faith where the agency "subsequently corrected . . . errors"). The Court thus affords the agency's declarations the usual presumption of good faith unless contradicted by evidence in the record. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

**A. Exemption 5**

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the privileges that the Government may claim when litigating against a private party," including "the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which government decisions and policies are formulated." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021). To invoke the privilege, the FBI must show that the documents are both "predecisional and deliberative." *Id.* at 362. "A document is predecisional if it was generated before the agency's final decision on the matter," and it is "deliberative" if it was "prepared to help the agency formulate its position" and "reflects the give-and-take of the consultative process." *Id.* And to withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency "reasonably foresees that disclosure would harm an interest protected by [the] exemption," *id.* § 552(a)(8)(A)(i)(I).

Only one document withheld under Exemption 5 remains at issue—"a spreadsheet pertaining to a semi-annual review of certain investigative files" numbered as Bates page 5873.

ECF 30-1, 2nd Seidel Decl. ¶ 4 & n.1. The FBI's declaration describes how the spreadsheet tracks "instances of, or non-compliance with, certain FBI policies or policy guides and includes recommendations for action, if applicable." *Id.* The FBI has withheld that record claiming attorney work product and deliberative process privilege. ECF 20 at 17. Secret does not challenge those portions of the document withheld as attorney work product. ECF 20 at 17; ECF 21-1 at 9. But Secret contests whether the page can be withheld "in full" under the deliberative process privilege, ECF 34 at 14, because the FBI has not identified the decision-making process at issue, ECF 21-1 at 13–14. The Court disagrees. According to the FBI, the spreadsheet tracked instances where FBI personnel failed to follow agency policies and was "prepared to help the agency formulate its position" as to how to address those incidents. *Reps. Comm.*, 3 F.4th at 362. The declaration makes clear the relevant decision-making process—how "agency compliance issues are addressed" and "agency policies or policy guides are formulated or amended." ECF 30-1, 2nd Seidel Decl. ¶ 4. The Court finds that the FBI has properly asserted Exemption 5 over this document because it has sufficiently explained that it contains information that would reveal deliberations around the FBI's proposed strategies for addressing noncompliance. *See id.* (confirming that the record "does not reflect final agency decisions on handling non-compliance"). And while Secret also argues that the FBI is sometimes "mandated" to disclose compliance-related issues such that this information should be released, nothing in the record demonstrates that this spreadsheet would be disclosed through any such process. ECF 34 at 15; *cf. Reps. Comm.*, 3 F.4th at 371 (describing how the FBI is "obligated by law to provide information and assistance to the Inspector General").

Next, the agency's description of the document, coupled with its discussion about the potential impact of disclosing it, makes the foreseeable harm from its release obvious to the Court. The agency has provided a sworn declaration stating that disclosure of the information contained

in Bates page 5873 would expose "FBI employees' internal thought processes before formalizing final opinions on compliance matters" and thus result in a chilling of "FBI employees' willingness to report, analyze, and help remediate compliance issues." ECF 30-1, 2nd Seidel Decl. ¶ 4. That is because, according to the FBI, the spreadsheet documents instances where the agency's policies were not followed—instances of potential wrongdoing or negligence that could result in consequences for FBI employees. *See id.* (discussing how the spreadsheet "describes instances of, or non-compliance with, certain FBI policies or policy guides" that were discovered in a "review of certain investigative files"). In order to improve compliance, the FBI must be able to candidly discuss what went wrong and consider how to respond without risking that its internal deliberations could later be exposed to public view. *See id.* Secret argues that the Court should apply "the legal presumption that government employees will perform their duties," which would require FBI employees to continue to "analyz[e] [and] remediat[e] compliance issues," even if that process became public, because they are bound to do so. ECF 34 at 15. But Secret does not cite any cases extending the presumption of regularity that far. Even though FBI employees remain required to do their jobs, the agency's declaration explains that they may feel more reluctant to candidly discuss instances of noncompliance and how such matters could be prevented in the future if they believe that their analysis will see the light of day. *See* ECF 30-1, 2nd Seidel Decl. ¶ 4 (describing how publication would dampen employees' "willingness to report, analyze, and help remediate compliance issues"). Having contextualized its harm to the specific document at issue, the Court finds that the FBI has met its burden to demonstrate foreseeable harm. *See Alford v. Collins*, No. 22-cv-2856, 2025 WL 3140556, at *8 (D.D.C. Nov. 10, 2025) (accepting agency explanations of foreseeable harm where they "go beyond . . . mere cookie-cutter representations" and "adequately describe the foreseeable harm to the specific deliberative process").

Secret further contends that the FBI's assertion of the deliberative process privilege should be denied pursuant to the government-misconduct exception because the information withheld "relates to FBI agents' improper use of investigative tools in violation of" the FBI's Domestic Investigations and Operations Guide (DIOG).[5] ECF 34 at 16–17. According to Seals, the public should know whether the FBI improperly targeted "Seals' First Amendment-protected activity" when it investigated him. *Id.* As the D.C. Circuit has recognized, "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). "[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Id.* at 738. Secret, however, has not demonstrated that the FBI engaged in "the sort of extreme government wrongdoing that would prevent [it] from invoking the deliberative-process privilege." *Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 903 F. Supp. 2d 59, 68 (D.D.C. 2012); *id.* at 67 (stating that "[t]he party seeking release of withheld documents under this exception must provide an adequate basis for believing that the documents would shed light upon government misconduct"). For example, *In re Sealed Case*, a case Secret relies on, involved allegations of bribery against the Secretary of Agriculture, which resulted in a grand jury investigation. 121 F.3d at 734. There were thus substantial reasons for the D.C. Circuit to "believe government misconduct [had] occurred" given

[5] The DIOG is a manual written by the FBI that seeks to "standardize policy so that criminal, national security, and foreign intelligence investigative activities are accomplished in a consistent manner," and is a "collection of procedures, standards, approval levels, and explanations, that contains information ranging from general principles to chapters detailing the FBI's procedures for conducting clandestine operations." *Muslim Advocs. v. U.S. Dep't of Just.*, 833 F. Supp. 2d 92, 95 (D.D.C. 2011).

the resulting criminal investigation. *Id.* at 746. Courts in this district have otherwise applied the exception narrowly, reasoning:

> If every hint of marginal misconduct sufficed to erase the privilege, the exception would swallow the rule. In the rare cases that have actually applied the exception, the "policy discussions" sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government. The very discussion, in other words, was an act of government misconduct, and the deliberative process privilege disappeared.

*ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008). Here, Secret has provided no basis for concluding that the FBI spreadsheet contains discussion of any seriously illegal or nefarious process. Instead, the spreadsheet appears to be part of the agency's process for remediating routine policy infractions and violations—a "legitimate governmental process intended to be protected by Exemption 5." *Nat'l Whistleblower Ctr.*, 903 F. Supp. 2d at 68; *see* ECF 20-1, 1st Seidel Decl. ¶ 53 (describing the withheld material as "a report regarding compliance/noncompliance with agency policy/program guides"). That information is the kind of "marginal misconduct" that is not sufficient to "erase" the deliberative process privilege. *ICM Registry*, 538 F. Supp. 2d at 133.

Finally, Secret argues that, even if the exemption applies, purely factual information contained in Bates page 5873—for example, where the agency is simply "describing past instances of noncompliance"—is reasonably segregable and must be disclosed. ECF 34 at 14. The Court cannot yet determine whether the FBI has complied with its obligation to release all reasonably segregable information. As will be explained *infra* in Section III.F, the D.C. Circuit has issued some recent decisions concerning FOIA's segregability requirements and the FBI's declarations do not address those requirements. *See Rudometkin v. United States*, 140 F.4th 480, 487 (D.C. Cir. 2025) (requiring the government to show that "it has released all reasonably segregable information within exempt records that could be disclosed without causing foreseeable harm to an

interest protected by Exemption 5"). Because the FBI has not conducted an analysis of whether there is "foreseeable harm from disclosure of *otherwise-exempt* information," in addition to attempting to "segregate and release nonexempt information," the Court will order the agency to conduct its segregability analysis in light of more recent precedent. *Leopold v. Dep't of Just.*, 94 F.4th 33, 37–38 (D.C. Cir. 2024). As part of that review, the FBI can confirm whether it has segregated and released all nonexempt factual information in the spreadsheet withheld under Exemption 5.

So, having found that the FBI properly asserted Exemption 5 over this document and that it sufficiently demonstrated foreseeable harm, the Court grants summary judgment to the agency as to its sole Exemption 5 withholding. But the Court also orders the agency to review this document as part of its global segregability analysis in light of the D.C. Circuit's rulings.

**B. Exemption 7(C)**

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" if the records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[6] 5 U.S.C. § 552(b)(7)(C). While the Parties no longer disagree about most of the FBI's Exemption 7(C) withholdings, Secret continues to challenge the FBI's withholding of the names of St. Louis County Police Department (SLCPD) personnel in 102 pages of records. ECF 34 at 17. The FBI represents that it withheld the names of SLCPD personnel to

[6] The FBI also relied on Exemption 6, which provides that personnel files need not be released if their disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The D.C. Circuit has recognized that "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is somewhat broader than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). In this case, the Court has "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.*; *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (same); *see also* ECF 31-1 at 6 & n.4 (the FBI asking the Court to solely decide the privacy-based redactions under Exemption 7(C) instead of Exemption 6).

protect the identities of those officers who "aided the FBI in the law enforcement investigative activities reflected in the records responsive to plaintiff's request." ECF 20-1, 1st Seidel Decl. ¶ 65. The Court finds that the FBI has established that disclosure of these local police officers' names would constitute an unwarranted invasion of their privacy and has sufficiently demonstrated foreseeable harm.[7] Accordingly, summary judgment is granted to the FBI on its remaining Exemption 7(C) withholdings.

Courts in this district have repeatedly recognized that law enforcement personnel have a significant privacy interest "in not having their identities disclosed, because disclosure could lead to harassment or embarrassment and undue public attention." *Pinson v. U.S. Dep't of Just.*, 245 F. Supp. 3d 225, 251 (D.D.C. 2017); *see also Boehm v. FBI*, 948 F. Supp. 2d 9, 30 (D.D.C. 2013) ("It is well established that Exemption 7(C) protects the identities of local law enforcement officers."); *McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 166 (D.D.C. 2012). ("The ATF's decision to withhold the names of and identifying information about federal and state law enforcement agents . . . is entirely consistent with the prevailing law."); *Truesdale v. U.S. Dep't of Just.*, No. 03-cv-1332, 2005 WL 3294004, at *6 (D.D.C. Dec. 5, 2005) (same). The FBI's declaration established that interest, stating that, "[g]iven the violence that appeared to surround Seals and the amount of publicity over his murder," disclosure of the names of the local law enforcement personnel who assisted the FBI "could subject them to harassment that would not only invade their privacy but would create a strong likelihood that they would be targeted for reprisal by individuals who shared Seals'[] cause." ECF 30-1, 2nd Seidel Decl. ¶ 6.

[7] In evaluating Exemption 7(C), the Court would normally "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Here, the Court does not engage in this balancing test because Secret has argued that "no privacy interests are implicated" because the information is already public and "no balancing test is required." ECF 21-1 at 16. The Court proceeds directly to analyzing his public-domain exception argument.

Secret argues that some names of local law enforcement personnel are already known to the public and thus cannot be withheld under Exemption 7(C). Specifically, Secret cites three public sources for this information: (1) SLCPD incident reports, (2) news articles, and (3) SLCPD payroll records. ECF 21-2, Statement of Undisputed Material Facts ¶¶ 43–49. Under the public-domain doctrine, the government "cannot rely on an otherwise valid exemption claim to justify withholding information that has been officially acknowledged or is in the public domain." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992). To invoke this exception, a plaintiff must "point[] to specific information in the public domain that appears to duplicate that being withheld." *Id.* "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1271 (D.C. Cir. 2023); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (requiring plaintiff to show that the "*exact* portions" of the withheld documents have been "previously disclosed"). Therefore, Secret bears the burden of showing that the information at issue "(1) is as specific as the information previously released; (2) matches the information previously disclosed; and (3) was made public through an official and documented disclosure." *McRae*, 869 F. Supp. 2d at 165. An "educated *guess*" as to the withheld content is insufficient. *Id.* at 165–66; *see also Lesar v. U.S. Dep't of Just.*, 455 F. Supp. 921, 925 (D.D.C. 1978) ("The fact that an expert can piece together identifying data does not make the identifications in question automatically part of the public domain.").

It is true that some of the names of officers who worked at the SLCPD are known to the public. There are also public incident reports identifying the names of officers who responded to the scene of Seals' murder. But the public sources Secret identifies do not specify which officers

cooperated with the FBI related to any Seals investigation, which is the information that the FBI says it has withheld. ECF 20-1, 1st Seidel Decl. ¶ 65; ECF 30-1, 2nd Seidel Decl. ¶ 6. The public documents reveal (1) the last names of officers who reported or approved incident reports on the night of Seals' murder, ECF 20-1 at 98–110; (2) the names of SLCPD officers who attended a candlelight vigil for victims of drunk driving, ECF 21-3 at 9; (3) publicly available salary records for certain SLCPD employees, with no specific tie to the Seals case, *id.* at 11–19; and (4) a news article quoting one SLCPD officer making a statement that the SLCPD—generally—was investigating Seals' murder, *id.* at 21. None of these sources disclose the names of any SLCPD officers who cooperated with the FBI in investigating Seals before or after his murder. Even the incident reports do not "match[]" the information at issue. *See McRae*, 869 F. Supp. 2d at 165. While specific officers may have answered a call or gone to the scene on the night of Seals' murder, it is not known whether those same officers or others worked with the FBI in any related investigation or what roles they played in that investigation. These public documents are thus a far cry from the information the FBI has withheld—the unredacted names of officers who assisted federal investigators. ECF 20-1, 1st Seidel Decl. ¶ 65 (discussing how the requested records would disclose those who "aided the FBI in the law enforcement investigative activities"). And as for the news articles and payroll records, as the FBI described in its declaration, "publicly acknowledging that an individual worked in the [SLCPD] at some time in the past is not akin to officially acknowledging that individual's role in specific SLCPD investigations or in specific FBI investigations." ECF 30-1, 2nd Seidel Decl. ¶ 9. Secret has thus not shown that "any individual publicly disclosed his or her role" in any federal investigation, "much less that the information publicly disclosed is the same as the information being withheld." *Boehm*, 948 F. Supp. 2d at 31; *AFL-CIO v. Fed. Election Comm'n*, 177 F. Supp. 2d 48, 62 (D.D.C. 2001) ("[E]ven for those

names that are known to be publicly available, . . . [the party] has not met its burden of showing that the same degree of disclosure has occurred.").

Secret then argues that the FBI has failed to demonstrate any foreseeable harm resulting from the disclosure of this information, but the Court disagrees. ECF 21-1 at 17. The agency's declaration provides that identifying the specific officers who worked with the FBI in connection with the Seals investigation could subject those officers to retaliation because the high-profile nature of the murder and related investigation could attract undue public interest and lead to the officers becoming "target[s] for reprisal." ECF 30-1, 2nd Seidel Decl. ¶ 6. Secret has even acknowledged the controversy surrounding Seals, including that there are some who believe that the police played a role in Seals' murder due to his involvement with the Black Lives Matter movement. ECF 1-1 at 2. Disclosing the names of the officers who cooperated with the federal government investigating Seals, then, could subject them to "unnecessary and unwelcome harassment."[8] ECF 20-1, 1st Seidel Decl. ¶ 65. As a result, the Court grants summary judgment to the FBI on its Exemption 7(C) withholdings.

**C. Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the[ir] production . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk

[8] The Court reminds the FBI that, as part of its segregability analysis, *see infra* Section III.F, it will be required to consider both (1) whether there is any factual nonexempt information that could be reasonably segregated, and (2) whether there is any exempt information that could be disclosed without causing foreseeable harm, including whether "partial disclosure of information is possible." *Leopold*, 94 F.4th at 38. If an officer's name could be revealed without triggering these harmful consequences—because, for example, new information has emerged tying the officer to the Seals investigation—the FBI would be required to disclose that information.

circumvention of the law."[9] 5 U.S.C. § 552(b)(7)(E). The Parties continue to dispute the FBI's withholding of six categories of information under Exemption 7(E): "(i) focus of specific investigations (category 2); (ii) dates and types of investigations (category 3); (iii) collection and analysis of information (category 4); (iv) identity and location of FBI and joint units, squads, and divisions (category 5); (v) operational directives concerning sensitive investigative techniques and strategies (category 7); and (vi) targets, dates, and scope of surveillance (category 8)." ECF 31-1 at 17. The FBI acknowledges that it incorrectly withheld some information under category 2 and has reprocessed and released that information to Secret. ECF 30-1, 2nd Seidel Decl. ¶ 12 & n.2. After further briefing and to assist the Court in understanding the nature of the FBI's Exemption 7(E) withholdings, the Court reviewed in-camera ten Bates pages numbered 5525, 5600, 5601, 5667, 5668, 5669, 5682, 5683, 5684, and 5685.

In doing so, the Court kept in mind the "relatively low bar" for the FBI to justify its withholdings under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). In sum, the agency is only required to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law" to be covered under the exemption. *Id.* at 1194. To withhold the records, the FBI must also

[9] There is some ambiguity in the statute as to whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" modifies "techniques and procedures" or only "guidelines." 5 U.S.C. § 552(b)(7)(E); *see Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014) (Kavanaugh, J.) (noting disagreement on the issue). "The D.C. Circuit 'has applied the risk circumvention of the law requirement both to records containing guidelines and to records containing techniques and procedures,' so this Court of course does the same." *Nat'l Ass'n of Crim. Def. Laws. v. Fed. Bureau of Prisons*, No. 18-cv-2399, 2025 WL 3240789, at *20 n.24 (D.D.C. Nov. 20, 2025) (quoting *Pub. Emps. for Env't Resp.*, 740 F.3d at 204 n.4).

demonstrate foreseeable harm from the release of these documents. "Whether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries." *Leopold*, 94 F.4th at 37. To satisfy the foreseeable harm requirement, the FBI must show that disclosure of the withheld material would "foreseeably harm an interest protected by" Exemption 7(E). *Id.* at 35. "Though the D.C. Circuit has not directly addressed the question, it is obvious that one interest protected by Exemption 7(E) is preventing 'circumvention of the law.'" *Reps. Comm. for Freedom of the Press v. FBI*, 754 F. Supp. 3d 56, 67 (D.D.C. 2024). Accordingly, courts have recognized that "the proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure." *Am. Ctr. for Law & Just. v. FBI*, No. 22-cv-3711, 2026 WL 1585366, at *7 (D.D.C. June 3, 2026); *Leopold v. CIA*, No. 22-cv-453, 2026 WL 866201, at *11 (D.D.C. Mar. 30, 2026) (same).

The FBI has met its burden to assert Exemption 7(E) for categories 3, 4, 5, 7, and 8, and the Court grants summary judgment to the agency on those categories. But for category 2, the Court finds that the agency's withholdings in the pages provided for in-camera review continue to contain improperly withheld material. Specifically, the withholdings under category 2 include redactions of publicly available factual material—information that does not shed light on the FBI's investigative focuses and the disclosure of which would not "create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. The Court grants summary judgment to Secret on the improperly withheld information identified in the in-camera documents and orders the agency to disclose that information. The Court grants summary judgment to the FBI on the remainder of the 7(E)-2 withholdings in the in-camera review pages and, at this juncture, denies summary judgment to both Parties on the 7(E)-2 withholdings in all other records. The Court will require the FBI to reprocess those remaining records in accordance with this opinion.

**1. Category 2: Focus of Specific Investigations**

The FBI describes this category of withholdings as the "focuses of specific FBI investigations related to the investigation of Darren Seals." ECF 20-1, 1st Seidel Decl. ¶ 95. Broadly speaking, this category covers content about why the FBI chose to investigate certain groups or individuals and their connections with each other as related to Seals. The agency argues that revealing these investigative focuses would alert "targets . . . to the FBI's interest in their activities" and allow them to "modify their behavior to avoid future investigative scrutiny." *Id.*; *see also* ECF 30-1, 2nd Seidel Decl. ¶ 12 (stating that disclosure would "preview how the FBI will respond in similar investigative situations"). Upon the Court's in-camera review of a sampling of the FBI's Exemption 7(E)-2 withholdings, the Court finds that the agency has accurately described and properly withheld the majority of the content that falls into this category. However, in a few instances, the FBI improperly withheld information that does not risk revealing the focus of any FBI investigation and must disclose that information in response to Secret's request.

Secret argues that the agency's 7(E)-2 withholdings are categorically improper because the "'focus of specific investigations' is simply not a law enforcement 'technique,' 'procedure,' or 'guideline' within the meaning of Exemption 7(E)," and that the FBI has failed to establish how release of this information would risk circumvention of the law.[10] ECF 21-1 at 21–22. The FBI is permitted to withhold "records contain[ing] law-enforcement techniques and procedures that are generally unknown to the public." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013). Other courts in this district have found that "the investigative focus of specific FBI investigations" falls under this protection because their disclosure "would

[10] In his reply, Secret states that the agency failed to properly respond to this argument and that the Court may treat it as conceded. ECF 34 at 25. But the Court finds that the agency responded to these arguments in its briefing, arguing that the category is properly withheld and describing the relevant documents in its declarations. *See* ECF 31-1 at 18.

reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity." *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018); *Shapiro v. Dep't of Just.*, No. 12-cv-313, 2020 WL 3615511, at *40 (D.D.C. July 2, 2020) (revealing the "investigative focus of specific investigations" would risk circumvention of the law where "the information would reveal the specific connection between one or more individuals or groups . . . and another matter under investigation"). The Court agrees with that conclusion. Here, the FBI has described how "revealing the broader investigative focuses of interconnected domestic terrorism investigations would reveal the scope of the FBI's gathered evidence/intelligence on Darren Seals, connections it has discovered between different criminal elements/terrorists/foreign adversaries, and the strategies it plans to pursue to prevent or disrupt further criminal activities/national security threats." ECF 20-1, 1st Seidel Decl. ¶ 95. The "connection[s]" the FBI has drawn and the "strategies it plans to pursue" are clearly revelatory of the FBI's "investigative techniques." *Shapiro*, 2020 WL 3615511, at *36, *40. The focuses of FBI investigations, then, are properly within the scope of Exemption 7(E).

Secret counters that the FBI's focus on "black identity extremists" and the "potential illegal possession of firearms" among such individuals is well-documented, and that revealing documents indicating any such investigative focus would not disseminate new information to the public. ECF 21-1 at 25. But, like the Court recognized above, Secret has not shown that the "*specific* information" he seeks is "already . . . in the public domain." *Citizens for Resp. & Ethics in Wash.*, 58 F.4th at 1271; *see also Neuman v. United States*, 70 F. Supp. 3d 416, 426 (D.D.C. 2014) (K.B. Jackson, J.) (citing *Davis*, 968 F.2d at 1279, and *Cottone*, 193 F.3d at 556, in assessing whether the public-domain exception applied to information withheld under Exemption 7(E)). The D.C. Circuit has permitted agencies to use Exemption 7(E) to "withhold confidential details of a

program whose general contours were publicly known." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007); *see also Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness."). Information that would reveal how the FBI is monitoring the focuses of its investigations and how the FBI draws connections from one investigative focus to another is properly withheld, even if the public may broadly know that law enforcement is interested in certain activities. "[R]evealing the utility of this type of information to the FBI would essentially instruct criminals on how best to maintain operational security when conducting their criminal activities." *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 183 (D.D.C. 2014); ECF 20-1, 1st Seidel Decl. ¶ 95 (disclosing the focuses of investigations would allow investigative targets "to take active measures to conceal/destroy evidence or modify their behavior to avoid future investigative scrutiny"). The Court finds that disclosure of such information could risk the circumvention of the law, allowing potential wrongdoers to better understand how the FBI pieces together its web of investigative focuses, and such information is properly withheld under Exemption 7(E).

Finally, Secret pointed out in his summary judgment briefing that there were "extensive 'Category 2' redactions that are improper on their face" in the FBI's initial round of withholdings. ECF 21-1 at 22. The FBI subsequently re-processed and released unredacted material on dozens of pages of records.[11] But after reviewing the in-camera documents, the Court finds that the FBI

[11] The FBI identified that it incorrectly withheld information in this subcategory on Bates pages 1, 3, 4811, 5523–5527, 5529, 5531–5539, 5568, 5575–5580, 5587, 5594–5597, 5600, 5602, 5609–5610, 5629, 5631, 5633, 5635, 5637, 5640, 5643, 5647, 5650, 5667–5668, 5670–5677, 5679–5683, 5684, 5685, 5687, 5694, 5696, 5704–5710, 5711, 5716, 5748, 5754, 5755, 5762, 5771, 5775, 5782, 5789, 5795, 5797, 5804, 5809, 5824, 5828, 5832, 5835, 5838, 5842, 5845, 5854, 5857, 5866–5867, 5870, 5878, 5880–5884, 5887–5888, 5891–5895, 5897–6293, 6298, and 6299. *See* ECF 31-1 at 18 & n.8.

has continued to withhold information that is already publicly available or otherwise does not reveal any law-enforcement techniques or procedures. The Court finds that the FBI improperly withheld the following information[12]:

- **Local law enforcement agencies**: The FBI redacted part of the name that reveals the police department's location on Bates page 5668 and in two references to the fire department on Bates page 5684. It is well known that the events concerning Seals occurred in the St. Louis area and that the SLCPD responded to the scene of Seals' murder. *See* ECF 20-1 at 98–110. There is no need for the FBI to continue to withhold these references.
- **Name of FBI division**: In the "From" lines on page 5667 and 5682 and on Bates pages 5682, 5684, and 5685, the FBI withheld the name of the FBI division involved. The location of the events discussed is already public and disclosing the name of the division would not risk revealing any specific law-enforcement procedures or techniques.[13]
- **General location of investigation**: On Bates pages 5600, 5667, and 5682, in the lines directly underneath Seals' name, the FBI withheld the general location of the surveillance or investigation. As explained, the location of the events discussed is already public and disclosing the general geography involved in the Seals investigation would not risk revealing any specific law-enforcement procedures or techniques.

---

[12] For the following listed information, the Court orders summary judgment in Secret's favor as to Category 7(E)-2. To the extent that the FBI asserts that it is seeking to withhold the information under another category of 7(E) as well—including any of the uncontested categories—the agency can explain the basis for its withholding in its supplemental Vaughn index and declaration. The Court is skeptical, however, that this information can be properly withheld under any Exemption 7(E) category given that it sheds limited light on the FBI's activities and its release does not appear to risk the circumvention of the law.

[13] While this information would appear to fall under category 7(E)-5 (covering "the location and identity of FBI units, squads, and divisions involved in the investigations related to Darren Seals," ECF 20-1 at 13), the FBI has withheld these lines under 7(E)-2 or other exemptions in the pages produced for in-camera review. The Court's order of disclosure of this information thus does not affect the Court's finding below that the agency's category 7(E)-5 withholdings are appropriate, as the agency never asserted that category as a basis for withholding this information.

- **Location of Seals' body**: On Bates page 5683, the FBI withheld the location where Seals' body was found. As Secret notes, this information is already public and contained in a document the FBI has filed as an exhibit to its own motion for summary judgment. *See* ECF 21-1 at 22 (noting that "the location where Seals' body was discovered . . . has existed in the public domain for six years"); ECF 20-1 at 98 (SLCPD incident report noting that police officers responded to a homicide on September 6, 2016, at 9640 Diamond Dr.).

The Court finds that disclosure of these factual details would not reveal any "law-enforcement techniques and procedures that are generally unknown to the public." *Am. Immigr. Council*, 950 F. Supp. 2d at 245; *see Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (explaining that courts can reject agency justifications for nondisclosure when the justifications are "controverted by . . . contrary evidence in the record"). That a local police department and FBI division would investigate events in St. Louis is not revelatory of any "technique[]" or "procedure[]," 5 U.S.C. § 552(b)(7)(E), apart from the common-sense conclusion that law enforcement units investigate events in their geography. And these details do not reveal the nature or focus of the FBI's investigation of Seals' murder. In the information it has already disclosed, the FBI made clear that it was tracking and monitoring those events. For example, the unredacted portions of those pages provide that "[o]n September 6, 2016, Seals' body was discovered with a single gunshot wound to his head inside the burnt remains of his known Jeep Wrangler." Bates page 5683. Releasing the full name of the police department that responded to the incident, then, would not reveal the FBI's interest in the case nor the nature of its work on it. If the agency believes that there is other information about the location of certain events or law enforcement divisions in other records that would shed light on the use of a law-enforcement

technique or procedure, it can explain why that information is non-public and must be withheld in its subsequent declaration.

In sum, the Court will grant Secret summary judgment on the improperly withheld Exemption 7(E)-2 information listed above from the pages produced for in-camera review. Accordingly, the FBI must process and release (1) the names of the local law enforcement departments on Bates pages 5668 and 5684, (2) the name of the FBI division in the "From" lines on pages 5667 and 5682 and on Bates pages 5682, 5684, and 5685, (3) the general location of the investigation on Bates pages 5600, 5667, and 5682, and (4) the location of Seals' body on Bates page 5683.[14] The Court grants summary judgment to the FBI on the remainder of its 7(E)-2 withholdings on the pages produced for in-camera review. The Court denies summary judgment to both Parties on 7(E)-2 withholdings on all other pages and orders the agency to re-process those pages to disclose any public information that may have been improperly withheld. The Court orders the FBI to file a supplemental declaration and Vaughn index confirming that any information it continues to withhold in this category is non-public and that disclosure would reveal the focus of an FBI investigation. Additionally, the agency is ordered to explain, as part of its re-processing, the foreseeable harm that would result from the disclosure of that information.

[14] Although the Court finds that the FBI erred in withholding this information, the Court recognizes that these are discrete, limited categories of redactions. *See Khatchadourian*, 453 F. Supp. 3d at 112 (stating that "a single discrepancy is not sufficient for a wholesale finding of bad faith" for an entire category of withholdings). The Court has reviewed the other portions of the documents produced in-camera and is "satisfied that the government has sustained its burden" as to most of its Exemption 7(E) withholdings. *Pub. Citizen*, 276 F.3d at 645. The Court also credits the agency with previously engaging in a good-faith effort to correct its own errors and release nonexempt information in this category. *See supra* note 11; *see Khatchadourian*, 453 F. Supp. 3d at 112 (finding that the agency's "inconsistent approach" in several records is "not evidence of bad faith" when the agency attempted to "correct[] any errors"). The Court thus continues to afford the FBI's declarations the presumption of good-faith as to the FBI's other Exemption 7(E) withholdings.

### 2. Category 3: Dates and Types of Investigations

Next, the FBI seeks to withhold "information pertaining to the types and dates of investigations" at issue, including the status of "preliminary" or "full" investigations and the timeline of the investigations' progress. ECF 20-1, 1st Seidel Decl. ¶ 98. The Court will grant summary judgment to the FBI for this category because it has demonstrated that information about the timing and types of FBI investigations involved could risk informing potential wrongdoers of the FBI's investigative practices and thereby facilitating circumvention of the law.

As the FBI explains, the progression timeline within the "investigations related to Darren Seals" would shed light on "specific activities that triggered a particular type of investigation," allowing outsiders to "tailor their behavior to avoid" this trigger in the future. ECF 30-1, 2nd Seidel Decl. ¶ 14. Such "functional areas, or tiers, of investigations" also correlate with the FBI and its internal divisions' "specific priorities and strategy plans." *Id.* ¶ 15. Secret argues that these withholdings are improper because general information about the timing and types of FBI investigations can already be found in the FBI's DIOG. ECF 21-1 at 27. He attaches as an exhibit to his motion unclassified portions of the DIOG, including the FBI's general "standards for opening or approving a preliminary investigation," ECF 21-3 at 77, and policies on when it can open "full investigations," *id.* at 87. The information in the public manual is different, however, from the information that the FBI says it withheld. *See* ECF 20-1, 1st Seidel Decl. ¶¶ 98–99 (describing how the FBI withheld "the dates [it] initiated . . . investigations" and the "categorization of sensitive FBI investigations" "in connection with *actual investigation[s]* and *not in general discussion*" (emphasis added)). The DIOG sections Secret cites do not contain information equivalent to what the FBI has identified—unique investigative data points that would allow potential criminals to better understand what prompts the FBI to start an investigation or

escalate its investigatory interest. Similarly, the FBI represents that disclosing when an investigation began or the "length of time that a subject has been under investigation" would give subjects of investigations "valuable insight into how the FBI develops its investigations" and permit such individuals to "adjust their conduct to avoid investigative scrutiny." ECF 30-1, 2nd Seidel Decl. ¶ 16. That logic is persuasive to the Court and consistent with how other courts in this district have come out on the issue. *See Callimachi v. FBI*, 583 F. Supp. 3d 70, 92–93 (D.D.C. 2022) (finding that the FBI properly withheld "information about the timing of investigations" because such information would reveal the FBI's "investigative habits"); *McClanahan v. U.S. Dep't of Just.*, 204 F. Supp. 3d 30, 53–55 (D.D.C. 2016) (finding that the FBI properly withheld "references to types and dates of investigations" because revealing such information "could alert criminals as to the types of activities that the FBI monitors" and "enable . . . criminals to employ countermeasures to avoid detection").

Secret then argues that the FBI has not met its burden to comply with the foreseeable harm requirement to justify its withholdings. ECF 21-1 at 28–29. He states that it is "preposterous" that revealing when the investigation started and ended would risk circumvention of the law because that information is already publicly known, with the earliest records produced from March 2016 and other records demonstrating that the investigation was likely closed in 2018. *Id.* at 29. First, the Court rejects the premise that the specific triggering dates the FBI seeks to withhold are already in the public domain. Upon its in-camera review, the Court has found details about the dates and timing of the investigations that are not among the facts Secret identified. The Court thus has no reason to doubt the agency's declaration that the information it withheld is not publicly available. *See* ECF 30-1, 2nd Seidel Decl. ¶ 16 (stating that the FBI has disclosed some "in-between dates" but will not release the dates an "investigation is designated as a full or a preliminary investigation

because disclosure would inform investigative subjects of the specific activities that triggered the designation"); *see Davis*, 968 F.2d at 1279 (requiring plaintiff to point to "specific information in the public domain that appears to duplicate that being withheld"); *ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 492 (9th Cir. 2018) (describing how agencies are permitted to withhold records "contain[ing] non-public details" under Exemption 7(E)). Nor does the fact that the records sought relate to events that occurred in the past change the Court's conclusion. As one court observed, that the information "concerns past investigations changes nothing" because "a potential criminal can glean the same information about investigative techniques from past investigations as present ones." *Callimachi*, 583 F. Supp. 3d at 93.

Second, under Exemption 7(E), an agency can demonstrate foreseeable harm by establishing that release of the records would create a risk of the circumvention of the law. *See Reps. Comm.*, 754 F. Supp. 3d at 71–72 (recognizing that "it is obvious that one interest protected by Exemption 7(E) is preventing circumvention of the law"). Accordingly, "the proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure." *Am. Ctr. for Law & Just.*, 2026 WL 1585366, at *7. The Court is satisfied by the FBI's explanation that disclosure of the timing and triggering events of its investigations would "enable . . . criminals to employ countermeasures to avoid detection." *McClanahan*, 204 F. Supp. 3d at 55. "For the same reason, the Court now concludes that releasing this information would also lead to foreseeable harm of the type Exemption 7(E) is meant to prevent." *Reps. Comm.*, 754 F. Supp. 3d at 71–72. Accordingly, the Court will grant summary judgment to the FBI on its Exemption 7(E)-3 withholdings.

**3. Category 4: Collection and Analysis of Information**

The FBI applies this category to protect "the methods [it] uses to collect and analyze information . . . for investigative purposes." ECF 20-1, 1st Seidel Decl. ¶ 101. The Court will also

grant summary judgment to the FBI for this category because the Court finds that the agency has explained why disclosure of the sources "from wh[ich] the FBI collects information" and the methods it uses to "analyze" that information would create a risk of circumvention of the law. *Id.*

Secret argues that much about the FBI's methods are already publicly known and thus unprotected by Exemption 7(E). ECF 21-1 at 30 (citing *Albuquerque Publ'g Co. v. Dep't of Just.*, 726 F. Supp. 851, 857 (D.D.C. 1989)). The Court will not re-hash its analysis of the public-domain exception from above, other than to reiterate that Exemption 7(E) continues to "protect confidential details of programs" even if "their general contours are publicly known." *Elec. Frontier Found. v. Dep't of Just.*, 384 F. Supp. 3d 1, 10 (D.D.C. 2019). The FBI has explained that "unknown details" about its methods of collection and analysis are within the withheld records and that disclosure of "the non-public details" would facilitate the circumvention of investigation by criminal subjects. ECF 30-1, 2nd Seidel Decl. ¶ 18. While Secret again cites public information about the FBI's general techniques—including the use of undercover operations, informants, search warrants, physical surveillance, and more—Secret has not pointed to information about how those methods were utilized in this investigation, as may be contained in the records. ECF 21-1 at 31. For example, the pages provided for in-camera review discuss information received from Confidential Human Sources (CHS). While the use of CHS as a general law-enforcement technique might be public, the ways that these sources were used to gather information about Seals and other related targets are not public. *See, e.g.*, Bates page 5668 (acknowledging that a "CHS" reported information on Darren Seals but redacting the nature of the information). As the FBI's declaration explains, those kinds of details, if disclosed, may allow other potential subjects to deduce more information about the nature of the FBI's capabilities as it relates to specific investigations and evade detection. *See* ECF 20-1, 1st Seidel Decl. ¶ 101 (describing how

disclosure "would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained"); *see also Vazquez v. U.S. Dep't of Just.*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) ("Even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness."), *aff'd* No. 13-5197, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013); *Muslim Advocs. v. U.S. Dep't of Just.*, 833 F. Supp. 2d 92, 104–05 (D.D.C. 2011) ("[T]here is no principle that requires an agency to release all details concerning its techniques simply because some aspects of them are known to the public."); *Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 79 (D.D.C. 2012) (finding that the mere fact that the public "may know some information about fraud indicators does not mean that defendants must disclose all details concerning fraud indicators"). This Court has also previously found that similar declarations justified the withholding of "methods used by the FBI to collect and analyze information," and does so again here. *Magassa v. FBI*, No. 19-cv-1952, 2023 WL 5174335, at *6 (D.D.C. Aug. 11, 2023).

While Secret attacks the FBI's declarations as "vague" or "conclusory," ECF 34 at 33, the Court disagrees and the cases he cites are inapposite. For example, in *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, the D.C. Circuit criticized the FBI for relying on a single, conclusory sentence in a declaration. 746 F.3d 1082, 1102 (D.C. Cir. 2014). The DOJ's declaration in that case invoked Exemption 7(E) "to protect procedures and techniques used by FBI agents during the investigation," and the D.C. Circuit rejected this statement, describing the FBI's declaration as an "inadequate," "near-verbatim recitation of the statutory standard." *Id.* Here, the agency has explained how disclosure of non-public details of the investigation would diminish the "relative utility" of "methods used in the collection and analysis

of information" by "educat[ing]" criminals about the techniques employed. ECF 20-1, 1st Seidel Decl. ¶ 101. The Court finds the agency's description to be concrete enough to justify its withholding. The agency has also provided pages for in-camera review, which allowed the Court to "deduce something of the nature of the techniques in question" and ensure that there are indeed non-public details withheld. *Dent v. Exec. Off. for U.S. Att'ys*, 926 F. Supp. 2d 257, 272–73 (D.D.C. 2013). And the agency's discussion of how the release of its methods for collecting and analyzing information would decrease the effectiveness of its investigative methods also satisfies the Court that the agency has established foreseeable harm from the disclosure of these documents. *See supra* Section III.C.

#### 4. Category 5: Identity and Location of FBI and Joint Units, Squads, and Divisions

Category 7(E)-5 encompasses the FBI's withholdings regarding "the location and identity of FBI units, squads, and divisions involved in the investigation of Darren Seals."[15] ECF 20-1, 1st Seidel Decl. ¶ 102. The agency convincingly explains in its sworn declaration that disclosure of this category of information "would reveal the targets[ and] the physical areas of interest of the investigation," allowing criminals to avoid known locations and units. *Id.* Disclosure of these details in document headings would also identify who within the FBI "originated or received the documents." *Id.* The Court finds that the agency also properly asserted the exemption over this category of withholdings and grants summary judgment to the FBI.[16]

In this category, the FBI indicates that it redacted information about "the specific type of squad in the field that assisted in an investigation related to Seals" because "[d]isclosure of the

[15] There are no Exemption 7E-(5) withholdings in the in-camera review pages provided to the Court, so the Court resolves this category of withholdings solely by looking to the agency's declarations.

[16] The FBI has already reprocessed certain pages in this category. ECF 30-1, 2nd Seidel Decl. ¶ 20 & n.3.

squad's identity would risk criminals knowing the identity of this particular squad and what it does within the FBI." ECF 30-1, 2nd Seidel Decl. ¶ 20. As the FBI has explained, "certain FBI units/squads are highly specialized" and revealing their involvement "would reveal non-public details" about the "techniques and procedures . . . deployed in certain investigative circumstances," improving criminals' ability to predict the FBI's moves. ECF 20-1, 1st Seidel Decl. ¶ 102. The Court finds that disclosure of such information would risk circumvention of the law because the public would be informed as to the role that certain squads play within the FBI. Other courts have found that similar explanations suffice to protect the "locations of FBI units, squads, and/or divisions," concluding that "revealing those units' identities would allow individuals to determine exactly what the FBI's interest is." *Shapiro*, 2020 WL 3615511, at *36; *see also Poitras*, 303 F. Supp. 3d at 159 (permitting the withholding of "identity or location of FBI or Joint Units, Squads, or Divisions").

Secret again argues that it is well-known that the FBI has an office in the St. Louis, Missouri area investigating "violent crime, firearms offenses, and threats against law enforcement," and that mere "confirmation" of that public information would not risk circumvention of the law. ECF 21-1 at 33. He also says that any confirmation of the involvement of the FBI's Domestic Terrorism Analysis Unit would not increase any such risk. *Id.* First, the Court has already ordered that the agency re-process its Exemption 7(E)-2 withholdings to release any information about FBI divisions that does not reveal the nature of the FBI's investigation or techniques, including by disclosing publicly known information. *See supra* Section III.C(1). Second, the Court accepts the FBI's representations that the information withheld under Exemption 7(E)-5 is non-public information, including information about specialized squads and units involved in the investigation. Secret's "educated *guess*" as to the units and squads involved

cannot trigger the public-domain exception. *McRae*, 869 F. Supp. 2d at 165 (requiring the information requested to be as "specific as the information previously released"). Secret asks the Court to order the release of documents that would confirm theories that he has pieced together from disparate news articles about different FBI unit types, but that is hardly information that is already "truly public." *Bloomberg LP v. FTC*, No. 22-cv-3309, 2024 WL 165989, at *4 (D.D.C. Jan. 16, 2024); *see Lesar*, 455 F. Supp. at 925 ("The fact that an expert can piece together identifying data does not make the identifications in question automatically part of the public domain."). Again, the burden is on the plaintiff to "establish that the information he seeks has entered and remains in the public domain" and Secret has failed to make such a showing here. *Bloomberg LP*, 2024 WL 165989, at *4.

The Court also finds that the agency's explanation that disclosure of this category of information "would reveal the targets [and] the physical areas of interest of the investigation," allowing criminals to avoid known locations and units, ECF 20-1, 1st Seidel Decl. ¶ 102, satisfies its obligation to establish foreseeable harm for its category 7(E)-5 withholdings.

**5. Category 7: Operational Directives**

Under Exemption 7(E)-7, the FBI sought to protect "operational directives" that "instruct FBI employees on the proper use" of "non-public FBI investigative procedures, techniques, and strategies."[17] ECF 20-1, 1st Seidel Decl. ¶ 109. The agency includes in this category documents analyzing instances of potential noncompliance with the DIOG. ECF 30-1, 2nd Seidel Decl. ¶ 22. The Court also grants summary judgment to the FBI for this category because disclosure of these directives would "disrupt[]" the FBI's usage of the "procedures, techniques and strategies these operational directives are intended to regulate." *Id.*

[17] There are also no Exemption 7E-(7) withholdings in the in-camera review pages provided to the Court, so the Court resolves this category of withholdings solely by looking to the agency's declarations.

Within category 7(E)-7, Secret asks the FBI to disclose a semiannual review of cases that the FBI's Chief Division Counsel "undertake[s] to ensure that investigative tools are not used solely to monitor First Amendment-protected activity." ECF 21-1 at 34. He argues that these pages "cross-reference[]" the publicly available DIOG and are therefore "publicly known." *Id.* But the FBI has attested that release of this information "would reveal the FBI's overarching investigative strategies in pursing different types of criminal and national security investigations" and "inform entities and individuals seeking to commit crimes" of "the investigative steps the FBI will take" and "how they should modify their behaviors to avert" scrutiny. ECF 20-1, 1st Seidel Decl. ¶ 109. Other courts in this district have accepted similar rationales to withhold operational directives, even where some of the information may be related to DIOG practices, and the Court finds those decisions persuasive here. *See, e.g., Muslim Advocs*., 833 F. Supp. 2d at 103, 105 (permitting the FBI to withhold information about its "operational directives" and to withhold portions of the DIOG); *Reps. Comm. for Freedom of the Press v. FBI*, 613 F. Supp. 3d. 104, 121–22 (D.D.C. 2020) (allowing the FBI to withhold "operational directives that provide information and instruct FBI employees on the proper use of certain sensitive non-public FBI procedures, techniques, and guidance for conducting investigations"), *rev'd on other grounds*, 3 F.4th 350 (D.C. Cir. 2021). And as previously discussed, merely alleging that withheld documents cross-reference a public manual is insufficient to demonstrate that the specific information redacted in those documents is in the public domain. *See supra* Section III.B. The FBI has sworn that the details of the review are not public and with nothing before the Court to counter that representation but Secret's suspicions, the Court agrees that "[r]evealing the subject of potential non-compliance may reveal a weakness in the FBI's abilities in a particular area." ECF 30-1, 2nd Seidel Decl. ¶ 22. As a hypothetical, for example, if a document analyzing noncompliance advised agents to avoid certain kinds of social

media monitoring due to First Amendment concerns, that could provide a "roadmap or guidance to those looking to circumvent the law," informing them of the agency's potential blind spots. *Am. Immigr. Laws. Ass'n.*, 852 F. Supp. 2d at 79; *see also Buckley v. U.S. Dep't of Just.*, No. 19-cv-319F, 2021 WL 5371463, at *18 (W.D.N.Y. Nov. 18, 2021) ("Revealing the FBI's operational directives would provide individuals and entities with insight into the FBI's standards when investigating domestic terrorism.").

The Court also finds that the agency's declarations have established foreseeable harm from the disclosure of this information because they explain that release of the operational directives "would greatly increase the risk that potential lawbreakers would be able to evade detection and/or be emboldened to engage in criminal activities." ECF 20-1, 1st Seidel Decl. ¶ 109. Accordingly, the Court grants summary judgment to the FBI on this category as properly withheld under Exemption 7(E).

**6. Category 8: Targets, Dates, and Scope of Surveillance**

Finally, under category 7(E)-8, the FBI withheld "information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations" in relation to the Seals investigation. ECF 20-1, 1st Seidel Decl. ¶ 110. The Court grants summary judgment to the FBI for this category as well. The agency explained that it utilized "surveillance operations to obtain investigative intelligence relevant to the investigation of Darren Seals." *Id.* While Secret argues that there is a plethora of public information about the FBI's general surveillance methods, the Court finds that the information the FBI indicates it withheld under category 7(E)-8 contains "non-public details about who, when, how, and under what circumstances" the FBI conducted surveillance and that disclosure "would allow current and future subjects of FBI investigations" to

avoid such operations. *Id.* Accordingly, the Court grants summary judgment to the FBI on its 7(E)-8 withholdings.

Secret relies on the FBI's admissions in other cases to argue that the agency's surveillance methods are public. ECF 21-1 at 35–36. For example, Secret cites information released in a criminal case in a different jurisdiction to infer that the FBI monitors the online activity and movements of other Black Lives Matter protestors. *See United States v. Daniels*, No. 3:18-cr-005-D, 2018 WL 620537, at *1–2 (N.D. Tex. Jan. 30, 2018) (describing the FBI's investigation of Daniels' online activity and subsequent search of his apartment). But Secret has not shown that the specific information withheld here, including "the employment of specific types of devices" and other details of the Seals investigation, is publicly available. ECF 30-1, 2nd Seidel Decl. ¶ 24; *see supra* Section III.B (discussing the requirements of the public-domain exception). The Court finds that the agency's withholdings under this category are proper because disclosure of these "details about the implementation of surveillance" could help current and future subjects of such operations to "develop countermeasures to defeat or avoid these types of surveillance." ECF 30-1, 2nd Seidel Decl. ¶ 24; *see also Jud. Watch, Inc. v. U.S. Dep't of State*, No. 12-cv-893, 2017 WL 3913212, at *4 (D.D.C. Sep. 6, 2017) (collecting cases holding that surveillance techniques are protected under Exemption 7(E) because release of the information would provide bad actors with "actionable information that can be used to detect and avoid surveillance in the future"). The pages provided for in-camera review confirm the Court's conclusion. Those records include discussion of how surveillance was conducted on certain targets and describe the aims of the surveillance—information different than what Secret says is already in the public domain.

While Secret relies on *ACLU of Northern California v. U.S. Department of Justice*, the documents analyzed by the Ninth Circuit in that case described general methods for "using various

technologies to obtain a suspect's location information" and only contained "publicly known investigative techniques." 880 F.3d 473, 492 (9th Cir. 2018). The Ninth Circuit distinguished any documents that would "reveal[] specific information about law enforcement methods of locating and apprehending suspects [that are] not publicly known." *Id.* at 491. Here, the FBI has asserted Exemption 7(E) to cover documents that contain non-public details of surveillance that would allow the subjects of surveillance to "defeat or avoid" the FBI's operations. ECF 30-1, 2nd Seidel Decl. ¶ 24. Based on these declarations, the Court also finds that the FBI has established foreseeable harm from disclosure due to the potential circumvention of surveillance.

* * *

In sum, the Court finds the majority of the FBI's Exemption 7(E) withholdings to be proper, granting summary judgment to the agency on categories 3, 4, 5, 7, and 8. The Court will grant Secret summary judgment on the improperly withheld 7(E)-2 information listed above from the pages produced for in-camera review. The agency is ordered to release: (1) the names of the local law enforcement departments on Bates pages 5668 and 5684, (2) the name of the FBI division in the "From" lines on pages 5667 and 5682 and on Bates pages 5682, 5684, and 5685, (3) the general location of the investigation on Bates pages 5600, 5667, and 5682, and (4) the location of Seals' body on Bates page 5683. The Court grants summary judgment to the FBI on the remainder of its 7(E)-2 withholdings on the pages produced for in-camera review. The Court denies summary judgment to both Parties on 7(E)-2 withholdings on all other pages and orders the agency to re-process those pages to disclose any public information that is improperly withheld. The FBI is ordered to file a supplemental Vaughn index and declaration explaining the bases for any continued 7(E)-2 withholdings, including an explanation of foreseeable harm.

**D. Exemption 7(A)**

The Parties also dispute whether the FBI's Exemption 7(A) withholdings are still at issue in this case or if the Exemption 7(A) withholdings overlap entirely with uncontested withholdings under Exemption 7(E)-1. The Court will thus deny summary judgment as to both Parties on this issue and order the FBI to clarify in its supplemental declaration.

Exemption 7(A) covers those records "compiled for law enforcement purposes" if their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The FBI asserted Exemption 7(A) to cover "pending investigative matters and pending file numbers." ECF 20 at 20. Category 7(E)-1 covered the FBI's assertion of Exemption 7(E) over file numbers. The FBI believes that this issue is moot because every page that it asserted Exemption 7(A) over has also been withheld under category 7(E)-1, which Secret is no longer challenging. ECF 31-1 at 2; ECF 21-1 at 9 & n.6. Secret argues that the FBI's declarations fail to clarify whether there is complete overlap between its withholdings under 7(A) and 7(E)-1, and whether the FBI continues to withhold any information beyond file numbers under 7(A). ECF 34 at 40.

On the record before it, the Court can only verify that the FBI asserted at least one Exemption 7(E) category for every document that it sought to withhold under Exemption 7(A). *See* ECF 20-1 at 306–09. While the Court agrees that any issues are moot to the extent that the FBI's assertion of Exemption 7(A) "overlap[s] entirely" with its assertion of Exemption 7(E)-1, ECF 31-1 at 2, the FBI has not filed any declaration or supplemental Vaughn index demonstrating such overlap. At this time, the Court cannot opine on whether the information withheld under Exemption 7(A) properly relates to investigations or enforcement proceedings that are still pending. The FBI is ordered to explain in its supplemental declaration whether any portions of any

documents continue to be withheld solely under Exemption 7(A), as opposed to Exemption 7(E)-1, or if they are withheld under other categories of Exemption 7(E).

**E. Sealed Documents**

In addition to the relevant FOIA exemptions, the FBI previously sought to withhold 410 responsive pages that were under a sealing order in a case in the Eastern District of Missouri. ECF 20-1, 1st Seidel Decl. ¶ 113; *see In re the Matter of the Application*, No. 4:16-mc-703 (E.D. Mo.). The documents included the United States' application for a search warrant for cell tower information near the area where Seals was killed on the dates around his death. *In re the Matter of the Application*, No. 4:16-mc-703 (E.D. Mo.), ECF 1 at 9 (Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d), Attachment A). The court in that case subsequently unsealed those pages and the FBI agreed to lift its Exemption 3 withholdings, releasing 397 pages in part and the remaining pages in full. ECF 31-1 at 3. The FBI has stated that it would apply Exemptions 6, 7(C), and 7(E) to withhold some of the records even after unsealing. ECF 20-1, 1st Seidel Decl. ¶ 113.

Secret now contests the FBI's continued withholding of Bates page 5879 as "sealed pursuant to United States court order." ECF 34 at 13. It appears that both Parties recognize that these documents are now unsealed and any prior sealing is no longer a basis for withholding. But from the Parties' briefing, it is unclear why the FBI has not released Bates page 5879 in full and if it is asserting any FOIA exemptions to withhold all or part of that page. *See* ECF 30-1, 2nd Seidel Decl. ¶ 27 (explaining that the FBI reprocessed Bates pages 5880–6293, applying the appropriate exemptions, but not mentioning page 5879). The Court thus orders the FBI to clarify in its supplemental declaration the basis for withholding that page and whether any live dispute remains after the Court has resolved the Parties' disputes as to Exemption 7.

**F. Segregability**

"After the [FBI] shows that a record includes exempt information, it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Rudometkin*, 140 F.4th at 494. To rebut this presumption, Secret "must introduce evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* And the Court must make an "express finding on segregability." *Id.*

The FBI stated in its initial declaration that after "an extensive page by page, line by line, review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information." ECF 20-1, 1st Seidel Decl. ¶ 133. Secret pointed out in his reply brief that the FBI then recognized that it improperly withheld material and disclosed additional portions of the records. ECF 34 at 23. As previously discussed, the Court will not penalize the FBI for "voluntarily declassifying documents," *Pub. Citizen*, 276 F.3d at 645, and will accord the agency the presumption of good faith unless contradicted by evidence in the record of the re-processed documents. *See SafeCard Servs., Inc.*, 926 F.2d at 1200.

But during the pendency of this case, the D.C. Circuit has further elaborated on segregability requirements in ways not addressed by the Parties. Under those decisions, the FBI is required to demonstrate that it "not only assessed whether it was possible to further segregate the non-exempt portions of the records from the exempt portions," but also that it "reviewed the exempt portions of the documents to assess whether any information could be segregated and released without causing a foreseeable harm to the agency." *Nat'l Ass'n of Crim. Def. Laws. v. Fed. Bureau of Prisons*, No. 18-cv-2399, 2025 WL 3240789, at *22 (D.D.C. Nov. 20, 2025) (citing *Rudometkin*, 140 F.4th at 494). Accordingly, based on the FBI's current declarations the Court

finds that "the record is not adequate to support the Government's claim of compliance with FOIA's segregability requirement." *Id.* The Court will thus deny summary judgment to both Parties as to segregability and "leave[] open the possibility that there are portions of records that must be produced." *Id.* The FBI is ordered to conduct its segregability analysis in a line-by-line review of documents and to attest to the results of its review in its supplemental declaration consistent with Circuit precedent and this opinion.

* * *

For the foregoing reasons, the FBI's motion for summary judgment, ECF 20, is **GRANTED** as to Exemption 5, Exemption 7(C), and all categories within Exemption 7(E) except for category 2. Secret's motion for summary judgment, ECF 21, is **GRANTED** as to the specific information withheld under Exemption 7(E)-2 in the in-camera review pages identified in this opinion. The FBI's motion for summary judgment is **GRANTED** as to all other Exemption 7(E)-2 withholdings in the in-camera review pages. Both Parties' motions are **DENIED** as to Exemption 7(E)-2 withholdings on all other pages and as to the issue of segregability. The FBI is **ORDERED** to file an updated declaration and Vaughn index (1) justifying any continued Exemption 7(E)-2 withholdings it continues to assert, (2) informing the Court as to whether a live dispute remains as to Exemption 7(A) and the documents unsealed by court order, and (3) providing an updated segregability analysis. A separate order will follow setting a schedule for further proceedings consistent with this opinion.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: August 20, 2026